**United States District Court**
**District of Massachusetts**

```
_____  )
                                 )
CLEARONE COMMUNICATIONS, INC.,   )
         Plaintiff,              )
                                 )
         v.                      )    Misc. Business Docket No.
                                 )    09-10125-NMG
ANDREW CHIANG, JUN YANG, LONNY   )
BOWERS, WIDEBAND SOLUTIONS,      )
VERSATILE DSP, INC. and BIAMP    )
SYSTEMS CORP.,                   )
         Defendants.             )
_____  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This is a miscellaneous business case brought by plaintiff
ClearOne Communications, Inc. ("ClearOne") to enforce a judgment
obtained in its favor in the United States District Court for the
District of Utah against defendants Andrew Chiang ("Chiang") and
Jun Yang ("Yang") who have real property in Massachusetts ("the
Utah case" and "the Utah judgment", respectively).  Pursuant to
the Utah judgment, Chiang and Yang are jointly and severally
liable to plaintiff for $1,912,000 and are each individually
liable for $637,322 in exemplary damages.  Before the Court is
ClearOne's motion seeking an order from this Court that the
defendants' declarations of homestead, both of which occurred
after the verdict was returned in the Utah case, and Chiang's
recent mortgage of his property are all subordinate to ClearOne's
Utah judgment.

-1-

I.   **Background**

The Utah case involved allegations of breach of contract, breach of fiduciary duty and misappropriation of trade secrets. Yang, a software engineer, and Chiang, a businessman, were accused of violating various non-compete, non-transfer and asset transfer agreements by misappropriating software source code from ClearOne for the benefit of 1) their own business, Wideband Solutions, Inc. ("Wideband"), and 2) the business of their partner and co-defendant, Lonny Bowers ("Bowers Junior").

The conduct of the defendants during the course of the Utah case was less than exemplary.  The Utah Court found that Yang was untruthful in his deposition testimony and, as a consequence, informed the jury that it could consider such untruthfulness in assessing Yang's credibility.  On November 5, 2008, the jury in Utah returned a verdict, finding that 1) Yang breached his contract and his duty of good faith and fair dealing with ClearOne and 2) both Yang and Chiang willfully and maliciously misappropriated trade secrets and breached their fiduciary duty to ClearOne.

Eight days after the jury returned its verdict but before a judgment was entered by the Utah Court, both Chiang and Yang recorded declarations of homestead, pursuant to M.G.L. c. 188, § 1, with respect to their homes located in Lexington and Andover, Massachusetts, respectively.  Shortly thereafter,

defendant Chiang granted a mortgage on his residence to secure a
loan in the amount of $417,000.  The mortgage records Donald
Bowers ("Bowers Senior"), the father of co-defendant Bowers
Junior, as the mortgage loan originator.  According to ClearOne,
Bowers Senior is the Chief Executive Officer ("CEO") and Chief
Financial Officer ("CFO") of Signature Mortgage and Financial
Services, Inc. ("Signature") which was the original mortgagee.
Chiang avers, however, that Flagstar Bank ("Flagstar") is the
true mortgagee and that Bowers Senior and Signature only
facilitated the transaction.[1]  The defendant Yang also granted a
mortgage to Worker's Credit Union of Fitchburg to secure a loan
in the amount of $300,000 shortly after the Utah jury returned
its verdict.

On April 21, 2009, after allowing several adjustments to the
jury's award, the Utah Court entered judgments for compensatory
and exemplary damages against Chiang and Yang with respect to the
trade secret claims only.  On April 24, 2009, ClearOne registered
the Utah judgment in this Court.  Pursuant to Fed. R. Civ. P.
69(a)(2), it subsequently served notices of deposition on Chiang,
Yang and other defendants but none appeared at any of the
scheduled depositions, claiming that they were in the process of

---

[1]  In December, 2009 the Court directed the parties to
submit additional briefing on, _inter alia_, the relationship
between Bowers Senior, Chiang, Signature and Flagstar but they
provided nothing beyond what is described here.

retaining counsel.

On June 19, 2009, ClearOne filed the pending motion to have defendants' post-verdict declarations of homestead and grant of mortgage subordinated to its execution.  Specifically, ClearOne seeks an order from this Court declaring that 1) the homestead declarations of both Chiang and Yang do not exempt their property from the laws of levy on execution and sale for payment of debts and 2) Chiang's grant of a mortgage to Signature is a fraudulent conveyance and, thus, subordinate to ClearOne's execution.[2] Defendants Chiang and Yang, appearing pro se, filed identical oppositions in response.

In July, 2009, this Court heard oral argument on the pending motion, ordered Chiang to submit to his deposition and directed the parties to submit supplemental memoranda.  After receiving an extension of time, plaintiff filed a supplemental memorandum in November, 2009 to which the defendants did not respond.  Because the record remained "too sparse to form the basis for a fully-informed decision", the Court directed further briefing in December, 2009 and, shortly thereafter, the parties complied.

---

[2]  Plaintiff does not challenge Yang's grant of a mortgage to Worker's Credit Union of Fitchburg.

Case 1:09-mc-10125-NMG   Document 52   Filed 05/24/10   Page 5 of 14

## II.   Analysis

### A.   Declarations of Homestead

#### 1.   Legal Standard

Massachusetts law permits the owner of real property to file a declaration of homestead thereby protecting that property from the claims of creditors.  The relevant statute states, in pertinent part:

> An estate of homestead to the extent of $500,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence.  Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases:
>
> . . .
>
> (2) for a debt contracted prior to the acquisition of said estate of homestead;
>
> . . .
>
> (6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake, duress, undue influence or lack of capacity.

M.G.L. c. 188, § 1.  Massachusetts courts have recognized that

> [h]omestead laws are based on public policy that favors preservation of the family home regardless of the householder's financial condition [and, for that reason, courts have] construed the State homestead exemptions liberally in favor of debtors.

Shamban v. Masidlover, 705 N.E.2d 1136, 1138 (Mass. 1999).

#### 2.   Application

As an initial matter, although § 1(2) excludes debts

contracted prior to the acquisition of the homestead, courts have construed that paragraph as applying to claims only <u>after</u> a judgment has entered and plaintiff does not argue otherwise. <u>E.g.</u>, <u>In re Miller</u>, 113 B.R. 98, 104 (D. Mass. 1990).

The parties instead focus on § 1(6).  It is undisputed that defendants Chiang and Yang have recorded homestead declarations for their respective residences.  ClearOne asserts, however, that the above-quoted exception applies to remove those properties from the protection of the homestead statute because the Utah judgment is "based upon fraud" or, at least, fraudulent conduct. Specifically, ClearOne asserts that the jury finding that the defendants Chiang and Yang breached their duty of good faith and fair dealing, willfully and maliciously misappropriated trade secrets and breached their fiduciary duties necessarily encompasses a finding of all of the elements of fraud.  ClearOne also emphasizes that Yang was untruthful during his deposition and that both Yang and Chiang committed affirmative acts to conceal their wrongdoing.

In a supplemental memorandum, ClearOne adds that the Utah Court, in ruling on a pending motion for a permanent injunction, may, in the near future, conclusively hold that the Utah judgment was based on fraud and thus decide the controlling issue.  In particular, proposed Findings of Fact and Conclusions of Law submitted by ClearOne in the Utah case, if adopted, state that

-6-

facts presented in that case were based upon "fraudulent conduct" and "demonstrate[d] calculated fraud on the Court and on ClearOne".  ClearOne also reiterates that misappropriation of a trade secret is fraud, whether explicitly pled as such or not. In fact, ClearOne contends that a cause of action for fraud is necessarily a part of a claim for misappropriation of trade secrets and could not have been independently brought because it would have been preempted by the Utah Uniform Trade Secrets Act.

Defendants respond that the Utah case did not involve allegations of fraud and that the conduct proven does not satisfy the elements of that tort.  They also focus on the statutory policy, namely the requirement that it be construed liberally to favor debtors.  In supplemental filings, the defendants add that ClearOne's position is hypocritical because, on the one hand, it argues that § 1(6) covers the Utah judgment even though there was no explicit allegation of fraud while, on the other hand, submitting proposed findings to the Utah Court seeking an explicit declaration that the case was based upon fraud.

ClearOne's argument is unpersuasive.  Whatever the ambiguous terms of M.G.L. c. 188, § 1(6) mean, the Court declines ClearOne's invitation to read them as broadly as it proposes. Because plaintiff has been unable to cite any Massachusetts authority to the contrary, the Court finds that the provision does not apply to a judgment based upon misappropriation and

theft of trade secrets.   The defendants' dishonest conduct during litigation, moreover, does not make the eventual judgment "based upon fraud" and plaintiff's proposed findings for a permanent injunction in the Utah Court are irrelevant to this decision because they were conspicuously drafted with the instant motion in mind.

More fundamentally, however, § 1(6) does not apparently pertain to judgments in cases asserting fraud as a cause of action.   The statutory exception is invoked by "fraud, mistake, duress, undue influence or lack of capacity".   M.G.L. c. 188, § 1(6).   That is not a list of causes of action or even conduct which gives rise to a cause of action but rather a list of common defenses to the enforcement of, for example, contracts or trusts. Statutory terms must be read consistently.   See, e.g., United States v. Williams, 553 U.S. 285, 294 (2008) ("[T]he commonsense canon of noscitur a sociis ... counsels that a word is given more precise content by the neighboring words with which it is associated."); S.D. Warren Co. v. Maine Bd. of Envtl. Prot,, 547 U.S. 370, 378 (2006) ("[A] word is known by the company it keeps ... and is invoked when a string of statutory terms raises the implication that the words grouped in a list should be given related meaning...") (citation and quotations omitted). Plaintiff's proposed interpretation (i.e., that the provision applies if the case underlying a judgment is based upon

-8-

allegations of fraud or fraudulent conduct) would read "fraud" more broadly than (and inconsistent with) the remainder of the terms in § 1(6). Thus, whatever the provision's meaning (which is obscure), it does not apply to this case and expanding it to do so would be contrary to the admonition of Massachusetts Courts that the homestead statute is to be construed "liberally in favor of debtors." See Shamban, 705 N.E.2d at 1138.

A final observation is warranted. ClearOne refers to the timing of the defendants' homestead recordings as further support for its argument and evidence of defendants' wrongdoing. Although the timing obviously indicates that the recording was done in light of the Utah judgment, the Massachusetts statute contains no time limit or restriction on when a homestead can be recorded. M.G.L. c. 188, § 2. It is, therefore, irrelevant.

Accordingly, plaintiff's motion will, with respect to the homestead declarations, be denied.

**B. Chiang's Mortgage**

ClearOne also argues that execution of its Utah judgment should be given priority over Chiang's grant of a mortgage to Signature because that mortgage was a fraudulent conveyance. The Massachusetts statute governing fraudulent transfers states, in pertinent part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer

or incurred the obligation:

> (1) with actual intent to hinder, delay, or defraud any
> creditor of the debtor ...

M.G.L. c. 109A, § 5.  The First Circuit has observed that "[i]t
is often impracticable, on direct evidence, to demonstrate an
actual intent to hinder delay or defraud creditors."  Max
Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248,
1254 (1st Cir. 1991).  Fraudulent intent can, however, be
inferred from circumstantial indicia including:

> (1) actual or threatened litigation against the debtor;
> (2) a purported transfer of all or substantially all of
> the debtor's property; (3) insolvency or other
> unmanageable indebtedness on the part of the debtor;
> (4) a special relationship between the debtor and the
> transferee; and, after the transfer, (5) retention by
> the debtor of the property involved in the putative
> transfer.

F.D.I.C. v. Anchor Props., 13 F.3d 27, 32 (1st Cir. 1994)
(citation omitted).  The confluence of several factors can
constitute conclusive evidence of actual intent to defraud.  Id.

ClearOne alleges that Chiang's mortgage is fraught with
indicia of fraudulent intent because Bowers Senior, the CEO and
CFO of Signature and the loan originator, is the father of one of
Chiang's co-defendants, Bowers Junior.  It also asserts that
Chiang's residence is his only asset and that the mortgage amount
($417,000), on top of the $500,000 protected by the homestead
exemption, is suspect.  Because Chiang's home was recently valued
at $919,000, the mortgage effectively removes all of Chiang's

equity from ClearOne's reach.  Finally, plaintiff states that the
Court can draw from Chiang's initial failure to appear at his
deposition the adverse inference that the mortgage was not
supported by consideration and was part of a collusive "equity
sopping" scheme.

Chiang responds that 1) the mortgage was a good faith arm's
length transaction, 2) Flagstar Bank, not Signature, is the
mortgagee and 3) Bowers Senior and Signature "merely acted as a
'conduit' of sorts between the Chiangs and Flagstar."  He also
maintains that there are issues of fact concerning whether the
mortgage rendered him insolvent and that the consideration he
received in exchange for the mortgage went to pay his legal fees
associated with the Utah case.

Because it was not fully informed about the factual issues
surrounding Chiang's mortgage and related proceeds, the Court
required supplemental pleadings.  In its submission, ClearOne
complains about Chiang's "evasive" deposition and Wideband's
incomplete document production.  It also reports that the Utah
Court has held Yang and Bowers Junior in contempt and issued
bench warrants for their arrest and that Bowers Senior is in
bankruptcy and has also been held in contempt.

With respect to the disposition of the mortgage proceeds,
each party attempts to account for the roughly $405,000
distributed, after fees, to Chiang by Flagstar.  From ClearOne's

-11-

perspective, defendants have engaged in a deliberate scheme to keep the money out of its reach and to divert most of the proceeds into the pockets of Bowers Senior (and even Chiang's wife) while pretextually claiming that they were used to pay legal fees.  Chiang's supplemental pleading, by virtue of some novel and suspect accounting, contends that he has paid approximately $340,000 for legal fees and costs in the Utah case and that the remainder went to monthly mortgage payments and family expenses.

Despite the confusion surrounding Chiang's mortgage, there is substantial evidence that the subject conveyance was fraudulent and the Court so finds for the following reasons:

1) The amount of the mortgage, combined with the homestead exemption, represents a "purported transfer of all or substantially all of the debtor's property".  F.D.I.C., 13 F.3d at 32.

2) There is evidence of a special relationship between the debtor and the transferee, despite Chiang's insistence that Signature and Bowers Senior only facilitated the transaction. Id.  Indeed, the fact that Chiang declined this Court's invitation to provide further evidence as to the relationship between Signature, Bowers Senior, Chiang and Flagstar indicates as much.

3) An alleged overpayment of $35,454 to Wideband for legal

fees was sent back to Chiang's wife instead of to Chiang which demonstrates an attempt to avoid ClearOne's judgment against him.

4) Chiang's supplemental memorandum contains what are apparently additional misrepresentations, such as a) accounting for the entire $124,000 payment to Wideband, which occurred <u>before</u> the Flagstar mortgage disbursement, in his report of how those mortgage funds were spent and b) the disingenuous assertion that his family, in apparent financial trouble, was "forced" to solve their need for transportation by purchasing a $17,000 vehicle.

5) ClearOne's speculation with respect to Chiang's wrongful disposition of the mortgage funds and his less than full disclosures is credible.

These are not all the reasons but they are sufficient and, accordingly, plaintiff's motion will, with respect to Chiang's mortgage, be allowed.


## ORDER

In accordance with the foregoing, plaintiff's motion to have defendants' post-verdict declarations subordinated to its execution of judgment (Docket No. 24) is, with respect to the homestead declarations, **DENIED** but is, with respect to Chiang's mortgage, **ALLOWED**.


-13-

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 24, 2010